UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 2:08-cr-14-JPH-CMM-02 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| FREDERICK L. DOUGLAS | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:08-cr-00014-JPH-CMM |
| | ) | |
| FREDERICK L. DOUGLAS, | ) | -02 |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Frederick L. Douglas has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 736. Mr. Douglas seeks immediate release from incarceration based on his risk of severe illness should he contract COVID-19. Dkt. 753. For the reasons explained below, his motion is **DENIED**.

## I.    Background

In September 2009, Mr. Douglas pled guilty to one count of conspiracy to distribute 500 grams or more of methamphetamine (mixture), in violation of 21 U.S.C. §§ 841(a)(1), 846, 851(a)(1). Dkts. 461, 467. According to the stipulated factual basis for the guilty plea, Mr. Douglas served as a distributor for a large methamphetamine trafficking operation in Terre Haute, Indiana. Dkt. 469. Mr. Douglas began receiving ounce quantities of methamphetamine from the leader of the operation during the spring of 2008 and escalated to receiving one pound of methamphetamine per week during the summer. When law enforcement stopped Mr. Douglas in Texas in October 2008, officials searched the vehicle and found approximately 3.5 pounds of methamphetamine concealed in the rear bumper of the vehicle and a small amount of methamphetamine in a Mountain Dew can in the front console of the car. The Court sentenced Mr. Douglas to 240 months of

imprisonment, to be followed by a 10-year term of supervised release. Dkt. 542. The Bureau of Prisons ("BOP") lists Mr. Douglas's anticipated release date (with good-conduct time included) as January 21, 2026.

Mr. Douglas is 56 years old. He is currently incarcerated at USP Marion in Marion, Illinois. As of November 17, 2021, the BOP reports that 2 inmates and no staff members at USP Marion have active cases of COVID-19; it also reports that 650 inmates at USP Marion have recovered from COVID-19 and that 2 inmates at USP Marion have died from the virus. https://www.bop.gov/coronavirus/ (last visited Nov. 18, 2021). The BOP also reports that 1,134 inmates at USP Marion have been fully inoculated against COVID-19. *Id.* That is, about 83% of the inmates at USP Marion have been fully inoculated against COVID-19. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of Nov. 18, 2021, the BOP reports that USP Marion and its satellite camp have a total inmate population of 1,364).

Mr. Douglas filed a pro se motion for compassionate release. Dkt. 736. The Court appointed counsel for Mr. Douglas, dkt. 737, and counsel filed a brief in support of the motion, dkt. 753. The United States filed opposition to the motion, dkt. 758, and a supplement to provide the Court with documentation showing that Mr. Douglas had received his second dose of the Pfizer COVID-19 vaccine on January 28, 2021, dkt. 769. The Court subsequently ordered Mr. Douglas to show cause why the Court should not deny his motion for compassionate release because the risk presented by the COVID-19 pandemic no longer presents an extraordinary and compelling reason for his release. Dkt. 777. Mr. Douglas responded to the Court's order, dkt. 779, and the motion is now ripe for decision. As explained below, Mr. Douglas has not presented an extraordinary and compelling reason warranting relief under § 3582(c)(1)(A). Thus, his motion must be denied.

## II.      Discussion

Mr. Douglas seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 753. Specifically, he contends that his medical conditions (hypertension, obesity, COPD, and pre-diabetes), which make him more susceptible to severe complications from COVID-19, combine with the BOP's inability to control COVID-19 outbreaks in their facilities to establish extraordinary and compelling reasons to reduce his sentence to time served. *Id.* He further argues that despite having received both doses of the Pfizer COVID-19 vaccine, he should still be released because "[t]he virus is mutating and the Center for Disease Control is monitoring the efficacy of the vaccines against these new strains. The risk has not gone away, and those in confined spaces are at greater risk." Dkt. 779.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet, under one exception to this rule, a court may reduce a sentence upon finding that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that a court has broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). But, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

The risk that Mr. Douglas faces from the COVID-19 pandemic is not an extraordinary and compelling reason to release him.[1]   While the Court sympathizes with Mr. Douglas's fear of

---

[1] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court has considered the rationale provided by Mr. Douglas's warden in denying Mr. Douglas's administrative request for relief. Mr. Douglas's warden appears not to have considered the possibility that Mr. Douglas could show an "extraordinary and compelling reason" under Subsection (D) of

contracting the virus, the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD01, dkt. 33 (S.D. Ind. Aug. 12, 2020) (concluding that the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction).

Mr. Douglas claims that he is at an increased risk of experiencing severe COVID-19 symptoms because he suffers from various medical conditions—specifically, hypertension, obesity, COPD, and pre-diabetes. Some of these conditions are identified by the CDC (Centers for Disease Control and Prevention) as ones that can make you more likely to get severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 20, 2021) (identifying obesity and COPD as conditions that can make you more likely to get severely ill from COVID-19). The Court will assume that Mr. Douglas has one or more of these conditions for purposes of this Order.

Earlier in the pandemic, the Court found on several occasions that a defendant had established extraordinary and compelling reasons warranting release when the defendant suffered from conditions that the CDC recognized as increasing the risk of severe COVID-19 symptoms. *See*, *e.g.*, *United States v. Johnso*n, No. 1:99-cr-59-JMS-DML-06, dkt. 317 (S.D. Ind. Mar. 11,

---

the policy statement. *See* dkt. 753-3. Thus, the warden's decision provides little guidance to the Court's analysis.

2021). Underlying those holdings was the understanding that the virus was difficult to control in a prison setting, in part because no vaccine had yet been made widely available.

The situation has now changed dramatically. Three vaccines are being widely distributed in the United States, including the Pfizer vaccine that Mr. Douglas received. *See* dkt. 769. Although no vaccine is perfect, the CDC has recognized that mRNA vaccines like the Pfizer vaccine are effective at preventing COVID-19 and that COVID-19 vaccination prevented most people from getting COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Sept. 20, 2021). The CDC also reports that the COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading in the United States. *Id.* The vaccines are not 100% effective, and some vaccinated people may still get sick. *Id.* The CDC reports, however, that mRNA COVID-19 vaccines have been shown to provide protection against severe illness and hospitalization among people of all ages eligible to receive them, including people 65 years and older who are at higher risk of severe outcomes from COVID-19. *Id.*

COVID-19 vaccines have been made widely available within the BOP. As of September 20, 2021, the BOP has administered more than 220,000 doses of the vaccine and has fully inoculated tens of thousands of BOP staff members and inmates. *See* https://www.bop.gov/coronavirus/ (last visited Sept. 20, 2021). Mr. Douglas has now received both doses of the COVID-19 vaccine—thus, dramatically reducing his chances of being infected with COVID-19 and suffering severe symptoms if he is infected. In addition, as noted above, about 70 percent of the inmates housed at USP Marion have received both doses of the COVID-19 vaccine. This high rate of vaccination at USP Marion should provide Mr. Douglas with additional protection against infection. *See* https://www.cdc.gov/coronavirus/2019-

ncov/vaccines/effectiveness/work.html (last visited Sept. 16, 2021) ("In addition to providing protection against COVID-19, there is increasing evidence that COVID-19 vaccines also provide protection against COVID-19 infections without symptoms (asymptomatic infections). COVID-19 vaccination can reduce the spread of disease overall, helping protect people around you."). The BOP has also met with recent success in controlling the COVID-19 virus at USP Marion. As noted above, the BOP reports that 1 inmate and no staff members at USP Marion currently have active cases of COVID-19.

Recently, the Seventh Circuit held that COVID-19 could not be an extraordinary and compelling reason for release for an inmate who had declined the vaccine without an adequate medical justification. *See United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021). In so holding, the court reasoned, "[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine may still turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *Id.* at 803. Moreover, the court concluded that "[t]he federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective." *Id.* The Seventh Circuit reinforced its position on this issue in a subsequent case, *United States v. Burgard*, 857 F. App'x 254, 254 (7th Cir. 2021), in which it concluded that a prisoner with asthma had not established extraordinary and compelling reasons warranting compassionate release based on risk from COVID-19 because "the widespread availability of the COVID-19 vaccine within the Federal Bureau of Prisons likely eliminate[d]" release on such a

basis. As in *Broadfield*, nothing in the record indicated that Mr. Burgard was unable, medically or otherwise, to receive the vaccine; moreover, approximately 80% of the inmate population at his prison had been vaccinated. *Id.* Consequently, he was not entitled to release. *Id.*

Here, Mr. Douglas has been fully vaccinated against COVID-19, more than two-thirds of inmates at his facility have been fully vaccinated, and there is only 1 inmate with a current COVID-19 infection at his facility. Given these facts and the rationales of *Broadfield* and *Burgard*, the Court declines to exercise its discretion to find that the risk Mr. Douglas faces from the COVID-19 pandemic constitutes an extraordinary and compelling reason warranting release under § 3582(c)(1)(A). *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-3, dkt. 274 (S.D. Ind. Feb. 16, 2021) (finding no extraordinary and compelling reason based on COVID-19 risk where defendant had been fully vaccinated); *United States v. Schoonover*, No. 1:02-cr-156-JMS-TAB-01, 2021 WL 1814990, at *4 (S.D. Ind. May 6, 2021) (same); *see also United States v. Harrison*, No. 4:16-cr-40073-SLD, 2021 WL 2021440, at *3 (C.D. Ill. May 20, 2021) ("In light of his vaccination and the low number of cases at USP Lompoc currently, the Court finds that Defendant has not shown extraordinary and compelling reasons for release exist based on the COVID-19 pandemic.").

Because the Court declines to find extraordinary and compelling reasons warranting release, it need not determine whether the § 3553(a) factors warrant release.[2]

---

[2] When presenting his arguments regarding the § 3553 sentencing factors, Mr. Douglas discusses the disparity in the sentence he received in 2010, as compared to the sentence he would likely receive now based on changes to the guidelines and changes to mandatory minimums under the First Step Act. *See* dkt. 753 at 18–20. The Court does not interpret Mr. Douglas's motion to argue that his sentence disparity presents a stand-alone extraordinary and compelling reason to grant compassionate release; rather only that the Court should consider said disparity when balancing the § 3553 factors. *See id.*

### III.      Conclusion

For the reasons stated above, Mr. Douglas's motion for compassionate release, dkt. [736],

is **denied**.

 **SO ORDERED.**

Date: 11/18/2021


James Patrick Hanlon
United States District Judge
Southern District of Indiana



Distribution:

All Electronically Registered Counsel